Opinion filed July 17, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed July 17,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00104-CV 

                                                     __________

 

          MIKEAL TORRES,
INDIVIDUALLY AND AS NEXT FRIEND OF

      DAYLON TORRES,
RANDON TORRES, DUSTIN TORRES, COLLYN

            TORRES,
ZACHERY TORRES, AND KOBY TORRES, MINOR

                      CHILDREN,
AND AS REPRESENTATIVE OF THE

                              ESTATE
OF CENCI TORRES, Appellant

                                                             V.

                       DANNY=S SERVICE CO., LTD. ET AL, Appellees

 



 

                                         On
Appeal from the 106th District Court 

                                                         Gaines
County, Texas

                                              Trial
Court Cause No. 05-03-14934

 



 

                                                                   O
P I N I O N








 Mikeal Torres, individually and as next
friend of Daylon Torres, Randon Torres, Dustin Torres, Collyn Torres, Zachery
Torres, and Koby Torres, minor children, and as representative of the estate of
Cenci Torres filed suit against Danny=s
Service Co., Ltd. d/b/a Danny=s
Service Co., Inc.; Danny=s
Service Co. of Denver City, L.L.C.; and Roberto Villegas.  Mikeal alleged that
Villegas negligently caused a motor vehicle accident that resulted in Cenci=s death.  The jury found
that Cenci and Villegas were both negligent and apportioned 70% of the
negligence to Cenci and 30% to Villegas.  The trial court accepted the jury=s verdict and entered a
take-nothing judgment against Mikeal.  We reverse and remand.

I. Background Facts

Cenci
was driving her Ford Excursion northbound on FM 2055 heading into Denver City,
Texas, with her son, Daylon.  Villegas was also driving northbound on FM 2055,
hauling caliche in a dump truck to build a location for an oil well.  Villegas
slowed down to turn left onto a lease road.  Cenci was in the process of
passing Villegas as he initiated his turn.  She took evasive action, lost
control of her vehicle, and flipped it.  Cenci was injured in the accident and
died shortly thereafter.

II.
Issues on Appeal

Mikeal
raises two issues on appeal.  He argues that the trial court erred by allowing
Danny=s Service Co. to
impeach a fact witness with evidence that she suffered from and was taking
medication for depression and anxiety and that the trial court also erred by
improperly limiting his voir dire.

                                                                    III. 
Analysis

A. Did the Trial
Court Err by Allowing Danny=s
Service Co. to Impeach a Fact Witness With Her Mental Health History? 

 

Mikeal
called Loretta Ramirez as a fact witness.  Ramirez was a passenger in a car
traveling behind Cenci=s
vehicle and described the accident for the jury.  On cross-examination and over
objection, Ramirez testified that she was on Social Security disability because
of depression and panic attacks.  Ramirez took medication for her condition
and, on the day of the accident, was taking Effexor and Klonopin.  She
testified that these medications helped level everything out for her.  She did
not have a regular physician but sought treatment through MHMR.  Besides not
being able to work, Ramirez=s
condition had also prevented her from applying for a Texas driver=s license.

1.  Standard of Review. 








A
trial court=s decision
to admit or exclude evidence is reviewed under an abuse of discretion
standard.  Nat=l
Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  A trial
court does not abuse its discretion as long as some evidence of substantive and
probative character exists to support its decision.  Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 211 (Tex. 2002).  If, however, the trial court=s decision lies outside the
zone of reasonable disagreement, an abuse of discretion is shown.  Dixon v.
State, 244 S.W.3d 472, 478 (Tex. App.CHouston
[14th Dist.] 2007, pet. ref=d).

2.  Mental Health Evidence for Impeachment. 

Texas
follows a policy of wide-open cross-examination.  2A Steven Goode et al., Texas
Practice: Courtroom Handbook on Texas Evidence 611 (2007 ed.).  Tex. R. Evid. 611(b) provides that A[a] witness may be
cross-examined on any matter relevant to any issue in the case, including
credibility.@  Tex. R. Evid. 401 defines Arelevant evidence@ as Aevidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence.@  Thus, a witness may be
cross-examined on any issue that is probative of her credibility.   See
Perry v. State, 236 S.W.3d 859, 866 (Tex. App.CTexarkana 2007, no pet.) (relevant adverse
evidence that might affect a witness=s
credibility should be admitted so that the jury might use it in making the determination
of how much weight it should give the testimony).  This includes evidence that
reflects any impairment or disability affecting the witness=s credibility.  See
Saglimbeni v. State, 100 S.W.3d 429, 435 (Tex. App.CSan Antonio 2002, pet. ref=d).

Texas
courts have not adopted hard and fast rules for determining whether a witness=s mental health history is
relevant to a credibility analysis, choosing instead to consider this evidence
on an ad hoc basis.  See Virts v. State, 739 S.W.2d 25, 28 (Tex. Crim.
App. 1987).  The cases considering this issue suggest that the trial court=s decision can be informed
by several factors.  For example, whether the illness or condition was recent
or remote, the manner in which the illness or condition was manifested,[1]
and the importance of the witness=s
testimony to the issues being decided by the jury.[2]









Because
Texas follows an ad hoc approach, trial courts have broad discretion.  Scott
v. State, 162 S.W.3d 397, 401 (Tex. App.CBeaumont
2005, pet. ref=d).  If
mental health evidence is admissible for impeachment, the trial court also has
considerable discretion to limit the scope of any cross-examination.  See
Norrid, 925 S.W.2d at 347 (the trial court has wide latitude to impose
reasonable limits on cross-examination based upon concerns about harassment,
prejudice, confusion of the issues, and the witness=s safety).  But the trial court=s discretion is not
limitless.  The mere fact that the witness has suffered from, or received
treatment for, a mental illness or disturbance is insufficient to justify its
admission.  Id.  The trial court must have some evidence that the
illness is such that Ait
might tend to reflect upon the witness=s
credibility.@  Id.
(citing Virts, 739 S.W.2d at 30).  This evidence can take many forms, but
it must show that the witness=s
perception of events was affected[3] or that the
witness was otherwise impaired.[4]

3.  The Record.

The
record establishes that Ramirez has a disabling mental illness, but there is no
support in the record for the proposition that this illness or its treatment
affects her memory or perception of events.  Cf. Perry, 236 S.W.3d at
867 (the witness=s
experiences of hallucinations or visions were admissible as impeachment
evidence); Goodwin v. State, 91 S.W.3d 912, 918 (Tex. App.CFort Worth 2002, no
pet.) (no error to exclude evidence that witness was hospitalized in mental
health institution because there was no logical nexus connecting this
institutionalization with the witness=s
ability to observe details at the time of the assault); Lagrone, 942
S.W.2d at 613 (to pursue impeachment of a witness=s
perceptual capacity with evidence of drug addiction, counsel must demonstrate
actual drug-based impairment during the witness=s
observation of the crime).








Danny=s Service Co. argues that
Ramirez=s mental
health history was admissible because it had the right to impeach a witness
with inconsistent statements, that Ramirez provided different versions of how
the accident occurred,[5] and that
Ramirez=s medication
helped explain her perception or memory difficulty.  The right to impeach with
inconsistent statements is not questioned.  Mikeal did not object to the
following cross-examination:

Q.        Did
you ever tell anybody that you thought that Cenci=s
car was heading towards you-all at the time of the accident?

 

A.        At
the time of the accident, when Cenci=s
car B I had seen her,
and she was on the left-hand side of the road, and that=s when she was passing him.  So when she was
on the left-hand side of the road, I mean, it happened so fast that the back of
her vehicle could have been the front of her vehicle, because it was flipping
and everything.  But I knew that she had got cut off.  And remembering it all
now, I know that she was passing on the left-hand side.

 

Q.        My
question was: Did you tell some people originally that you thought she was
heading towards you-all at the time of the accident?

 

A.        That
she could have been by B
by the looks of her flipping over.

 

Danny=s Service Co. did not offer
direct evidence that Ramirez told anyone she thought Cenci=s car was coming toward
them at the time of the accident; but, even if we characterize this testimony
as evidence of a prior inconsistent statement, we do not read Virts to
hold that one need only raise a credibility challenge to an adverse witness to
open the door to their mental health history.  Instead, the trial court must
have some basis to conclude that a witness=s
medication or condition has impacted their memory or perception.








We
realize that the trial court watched Ramirez=s
video deposition before making a ruling. The court=s commitment is commendable B particularly considering
the fact that the court presides over a multi-county district and was
confronting winter weather issues during the trial.  At Danny=s Service Co.=s suggestion, we too have
watched the video.  Ramirez was an emotional and distraught witness.  This may
be due to her condition or medication, but judges are not qualified to make
independent determinations on the impact of a particular medication or the
effects of a particular disease.  Absent some history of memory or perception
problems such as delusions or some evidence of the potential side effects of a
medication or the disabilities associated with a mental health condition that
reflect on a witness=s
memory or perception, a trial court abuses its discretion by admitting mental
health information for impeachment purposes.  Because no such evidence is in
the record, we find that the trial court abused its discretion.

The
trial court=s error
was harmful.  Ramirez was the only independent fact witness, and she provided
much of the factual basis for plaintiff=s
liability claim.  Ramirez and her boyfriend were driving into Denver City. 
Cenci=s vehicle was in
front of them, and Villegas was in front of Cenci.  Ramirez testified that
Villegas did not use his blinkers and that he gave no indication he was turning
before Cenci started to pass.  When Villegas started to turn, Cenci took
evasive action and lost control of her vehicle.  Cenci=s vehicle flipped and landed on its roof. 
Ramirez went to Cenci=s
vehicle to render aid and heard Cenci say, AHe
cut me off.@  This
testimony was disputed by Villegas who insisted that he turned on his left turn
signal light approximately two truck lengths before the turn.

The
jury was required to resolve this conflicting testimony to ascertain
liability.  Consequently, impeachment evidence was crucial.  Because Ramirez
was improperly impeached, Issue One is sustained.  This holding makes it
unnecessary for us to address Mikeal=s
second issue.

IV. 
Holding

The
judgment of the trial court is reversed, and the case is remanded to the trial
court for a new trial.

 

 

RICK STRANGE

JUSTICE

 

July 17, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Virts, 739
S.W.2d at 30.





[2]Norrid v. State,
925 S.W.2d 342, 346 (Tex. App.CFort Worth 1996,
no writ) (no error to prohibit cross-examination about the witness=s psychological treatment and medications B in part because she had no knowledge of the offense
for which the defendant was charged and offered no testimony regarding the
commission of that offense).  In criminal cases, the witness=s status as an accomplice witness is also a relevant
factor.  See, e.g., Perry, 236 S.W.3d at 867.





[3]See, e.g., Scott,
162 S.W.3d at 401.





[4]See, e.g., Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997).





[5]Danny=s Service Co.=s brief contains the statement that ARamirez remembered that Cenci Torres= vehicle was coming toward her, going southbound on FM
2055.@  The record reference to support this proposition was
to counsel=s argument during a pretrial hearing.